UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF
TEXAS DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| vs. | ) | Cause No.: 3:15CR00266-M (01) |
| | ) | |
| | ) | |
| | ) | |
| NESTOR LERMA-CANDANOSA | ) | |

**DEFENDANT'S SUPPLEMENT TO THE SENTENCING MEMORANDUM
AND MOTION FOR NON-GUIDELINES SENTENCE**

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Defendant, **Nestor Lerma-Candanosa (Mr. Candanosa)**, hereby respectfully requests this honorable court consider this supplement to his sentencing memorandum and motion for downward departure and/or a variance from Offense Level of 21 (46 months to 57 months). The factors listed in 18 U.S.C. § 3553(a), as well as those set forth under 18 U.S.C. § 3661, supports the imposition of a non-guideline (variance) sentence of time served. Likewise, on April 15, 2016 the bipartisan United States Sentencing Commission ("Commission") voted unanimously to amend the federal sentencing guidelines, including significant changes pertaining to immigration policy. Based on the Commission's data and public comment, the Commission voted to amend the federal sentencing guidelines for illegal reentry. The promulgated amendment modifies the existing guideline by (1) eliminating the "categorical approach," which has been a source of widespread complaints by judges, the Department of Justice, and others; and (2) recalibrating the guideline to account for prior criminal conduct in a more proportionate manner. The newly adopted amendment adds a new tiered enhancement specifically aimed at criminal conduct occurring after

1

a defendant reentered the country illegally and also adds an enhancement to account for the number of times a defendant has been convicted of illegal reentry. The current base offense level for illegal reentry offenders remain the same, but the average sentence length for illegal reentry offenders is 16 months.[1]

## I. THE SENTENCING FACTORS 18 U.S.C. § 3553(A)

Mr. Candanosa has accepted responsibility for his crime. He has admitted to authorities that he understands that he has committed a violation of the laws of the United States by entering the country illegally. Illegally means that he did not go through the proper channels and obtain the necessary paperwork to live and work in the United States. Candanosa has stipulated to these facts as they are recited in the factual resume. Candanosa has verified the truth of these facts and he has confessed his guilt. In doing so, Candanosa has demonstrated the insight acceptance of responsibility sufficient to grant him a 2 level decrease in the offense level for acceptance of responsibility. *See* USSG §3El.l (a). (PSR § 25). Likewise, Mr. Candanosa has assisted in his own prosecution by timely notifying authorities of his intention to plead guilty. Accordingly, the offense level should be decreased by 1 additional level. *See* USSG §3El.l (b). (PSR § 26).

## II. MITIGATING OFFENSE CHARACTERISTICS

Mr. **Candanosa** stated he had no intention of returning to the United States after he was deported to Mexico on April 9, 2011. Rather, **Candanosa** advised that he returned to the United States out of fear and while in flight from would be assailants. **Candanosa** explains that he and three of his friends were kidnaped and held for ransom in Mexico along the border states of Nuevo Leon and Tamaulipas. **Candanosa** reported being held hostage for hours until he freed himself and fled from his captors, but not before being shot in the leg. **Candanosa**

---

[1] http://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Quick_Facts_Illegal_Reentry_FY15.pdf

advised he was able to use his cellular telephone to call for help. Mr. **Candanosa** stated his ransom was 1,000,000 pesos. He indicated one of his friends was killed. **Candanosa** explained the bullet caused him to be bed ridden for 20 months and he stated he and his family received death threats as a result of him reporting the kidnapping. Mr. **Candanosa** advised he returned to the United States because the United States is a safer place than Mexico. Mr. **Candanosa** further advised he was unaware of the legal procedure to seek asylum in the United States. (PSR §15).

Mr. **Candanosa** understands that the manner and circumstances under which he entered the United States does not constitute a defense to the charge of Illegal Reentry under 8 U.S.C. § 1326(a). However, the continuing violence in Mexico and the political climate that existed at the time Candanosa illegally reentered the country deserves mention. According to the Consulate General of the United States, even those not personally touched by the violence have seen their livelihoods destroyed, as tourists stay home and businesses close due to lack of business and/or extortion by the cartel assassins.[1]

Since 2006, the Mexican government has engaged in an extensive effort to combat cartels, meanwhile, the cartels have been engaged in a vicious struggle to control drug trafficking routes and other criminal activity. According to Government of Mexico figures, 34,612 people have been killed in narcotics-related violence in Mexico since December 2006. Much of the narcotics-related violence has occurred in the border region. More than a third of all U.S. citizens killed in Mexico in 2010 whose deaths were reported to the U.S. government were killed in the border cities of Ciudad Juarez. Narcotics-related homicide rates in the border states of Nuevo Leon and Tamaulipas have increased dramatically in the past two years. Carjacking and highway robbery are serious problems in many parts of the

border region and U.S. citizens have been murdered in such incidents. Incidents have occurred during the day and at night, and carjackers have used a variety of techniques, including bumping moving vehicles to force them to stop and running vehicles off the road at high speed. Pedestrians and innocent bystanders have been killed in these incidents. The number of kidnappings and disappearances in Monterrey, and increasingly throughout Monterrey's consular district, is of particular concern. Both the local and expatriate communities have been victimized and local law enforcement has provided little to no response. In addition, police have been implicated in some of these incidents. Travelers and residents are strongly advised to lower their profile and avoid displaying any evidence of wealth that might draw attention.[2]

These are the conditions which Mr. Candanosa has fled.

### III.   THE STATUTORY MAXIMUM UNDER § 1326(A)

Mr. **Candanosa** was indicted for illegal reentry into the United States under 8 U.S.C. § 1326(a). This is an offense punishable by a maximum of two years of imprisonment and one year's supervised release The Sentencing Commission has proposed an amendment to the illegal reentry guideline, which would lessen the impact of a remote prior conviction. Under the new proposed guideline, the offense severity levels would change if the conviction was sufficiently remote so that it did not count under USSG Chapter 4 for criminal history. The Court has wide discretion as to how to define "remote." Guiding factors are arguably how long ago the prior offense was committed, the type of offense committed (i.e., violent or drug related), whether the new offense committed was the same or similar as the one prior.

---

[2] http://hermosillo.usconsulate.gov/uploads/-d/ip/-dipX5SAlHSNhMUWdcqsLQ/July-15-2010-Travel-Warning.pdf
[3] http://zackskerritt.com/2011/11/is-mexico-safe-enough-to-bicycle-across/

Respectfully Submitted,

/s/ Jeffrey C. Grass
JEFFREY C. GRASS
TXSBN 00787581 101 E. Park Blvd., Suite 107
Plano, Texas 75074
Tel: (972) 422-9999
Email: Jeff@GrassLaw.com

*Counsel for Nestor Lerma-Candanosa*

## CERTIFICATE OF SERVICE

I certify that on May 8, 2016, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to:

Assistant U.S. Attorney Danial Gividen
1100 Commerce Street, Third Floor Dallas, TX 75242
214-659-8600
danial.gividen@usdoj.gov

Kyle Wolf USPO
Dallas, TX 214-753-2590
kyle_ wolf@txnp.uscourts.gov

*/s/ Jeffrey C. Grass*
JEFFREY C. GRASS



▶ THERE WERE 71,003 CASES REPORTED TO THE UNITED STATES SENTENCING COMMISSION IN FISCAL YEAR 2015.

▶ OF THESE CASES, 19,311 INVOLVED IMMIGRATION OFFENSES.[1]

▶ 81.9% OF IMMIGRATION CASES INVOLVED ILLEGAL REENTRY.

### Illegal Reentry Offenses

In fiscal year 2015, there were 15,715 offenders convicted of illegal reentry, accounting for 81.9% of all immigration offenders sentenced under the guidelines. The number of illegal reentry offenders has decreased 26.1% over the last five years.

#### Offender and Offense Characteristics

- In fiscal year 2015, most illegal reentry offenders were male (96.5%).

- The majority were Hispanic (98.7%), followed by Black (0.7%), White (0.5%) and Other Races (0.1%).

- The average age of these offenders at sentencing was 36 years.

- The most common Criminal History Category for these offenders was Category III (26.2%). The proportion of illegal reentry offenders in other Criminal History Categories were as follows:

  ♦ 24.9% of these offenders were in Category I;
  ♦ 23.0% were in Category II;
  ♦ 14.0% were in Category IV;
  ♦ 7.2% were in Category V; and
  ♦ 4.6% were in Category VI.

- Illegal reentry sentences were increased in 69.3% of all cases because of the offender's criminal history pursuant to section 2L1.2 of the sentencing guidelines. The increases were:

  ♦ four levels in 31.9% of these offenses;
  ♦ eight levels in 8.6% of these offenses;
  ♦ 12 levels in 7.6% of these offenses; and
  ♦ 16 levels in 21.3% of these offenses.

#### Punishment

- The majority of illegal reentry offenders were sentenced to imprisonment (98.7%).

- The average sentence length for illegal reentry offenders was 16 months.



**Number of Illegal Reentry Offenders**

FY11: 21,264
FY12: 19,257
FY13: 18,498
FY14: 16,556
FY15: 15,715

| Top Five Districts Illegal Reentry Offenders FY 2015 |
|---|
| District of New Mexico (N=3,384) |
| Southern District of Texas (N=3,158) |
| Western District of Texas (N=2,708) |
| District of Arizona (N=2,085) |
| Southern District of California (N=904) |

---

[1] Immigration cases include cases with complete guideline application information sentenced under USSG §§2L1.1 (Smuggling, Transporting or Harboring and Unlawful Alien), 2L1.2 (Illegal Reentry), 2L2.1 (Trafficking in Documents Relating to Citizenship), 2L2.2 (Fraudulently Acquiring Documents Relating to Citizenship), and 2L2.5 (Failure to Surrender Canceled Naturalization Certificate).



# Illegal Reentry Offenses

## Sentences Relative to the Guideline Range

- For each of the past five years, more than half of illegal reentry offenders were sentenced within the guideline range.

- More than one-quarter (26.0%) of illegal reentry offenders received a sentence below the applicable guideline range because the government sponsored the below range sentence in fiscal year 2015.

    ♦ Early Disposition Program (EDP) departures were granted in 23.7% of illegal reentry cases.
        ◊ These offenders received an average reduction of 44.8% in their sentence.

    ♦ Other government sponsored below range sentences were imposed in 2.0% of illegal reentry cases.
        ◊ These offenders received an average reduction of 37.9% in their sentence.

- The rate of non-government sponsored below range sentences increased from 12.4% of illegal reentry cases in fiscal year 2011 to 14.0% in fiscal year 2015.

    ♦ The average reduction for these offenders in fiscal year 2015 was 39.7%.

- The average sentence and the average guideline minimum for illegal reentry offenders have decreased over the last five years.

    ♦ The average sentence decreased from 19 months in fiscal year 2011 to 16 months in fiscal year 2015;

    ♦ The average guideline minimum decreased from 22 months in fiscal year 2011 to 19 months in fiscal year 2015.
        ◊ Over the last five years, fewer illegal reentry offenders received a 16-level increase in their offense level based on criminal history (from 27.3% of all illegal reentry offenders in fiscal year 2011 to 21.3% in fiscal year 2015).
            • A greater percentage of illegal reentry offenders received the 4-level increase in their offense level (from 26.3% in fiscal year 2011 to 30.7% in fiscal year 2015).

        ◊ Fewer illegal reentry offenders were also assigned to the highest Criminal History Category (from 5.7% in fiscal year 2011 to 4.6% in fiscal year 2015).
            • This corresponds with an increase in offenders assigned to the lowest Criminal History Category (from 17.6% in fiscal year 2011 to 24.9% in fiscal year 2015).







[2] "Early Disposition Program (or EDP) departures" are departures where the government sought a sentence below the guideline range because the defendant participated in the government's Early Disposition Program, through which cases are resolved in an expedited manner. See USSG §5K3.1.

SOURCE: United States Sentencing Commission, 2011 through 2015 Datafiles, USSCFY11-USSCFY15.

*For other* **Quick Facts** *publications, visit our website at www.ussc.gov/Quick_Facts.*



**One Columbus Circle, N.E.
Suite 2-500, South Lobby
Washington, DC 20002-8002**
T: (202) 502-4500
F: (202) 502-4699
www.ussc.gov
@theusscgov